IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ROBERT LOHF,

    Plaintiff,

 vs.          **Case No. 10-1177-RDR**

GREAT PLAINS MANUFACTURING,
INC.,

    Defendant.

## MEMORANDUM AND ORDER

  This matter is presently before the court upon defendant's motion for summary judgment. Having carefully reviewed the arguments of the parties, the court is now prepared to rule.

I.

  Plaintiff brings this action against his former employer, Great Plains Manufacturing, Inc. (Great Plains), asserting a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. He contends he was terminated by the defendant due to a disability.

  In its motion, defendant contends that plaintiff has not shown a prima facie case of employment discrimination under the ADA because plaintiff is not disabled within the meaning of the ADA. The defendant next argues that, even if plaintiff is found to be a qualified individual with a disability, he was not discriminated against due to his disability. The defendant contends that it has offered a legitimate, nondiscriminatory reason for terminating

plaintiff and plaintiff has failed to come forward with evidence demonstrating its reason is pretextual.

## II.

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Id. (citing Anderson, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Id. at 670-71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that

party's claim.  Id. at 671 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256; see Adler, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment).  The nonmoving party may not simply rest upon its pleadings to satisfy its burden. Anderson, 477 U.S. at 256. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Adler, 144 F.3d at 671.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." Id.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

### III.

The following facts are not controverted in the record. Plaintiff was hired by Great Plains in 1989.  Great Plains is a manufacturer of agricultural and landscaping equipment. Plaintiff suffers from a low back condition, spondylolisthesis.  His doctors

first imposed work restrictions in 1990. In 2006, his doctor assigned various lifting restrictions. These restrictions included no frequent or repetitive lifting more than 25 to 30 pounds, no excessive stooping and bending, and no prolonged sitting or standing. Great Plains accommodated these restrictions by providing a stool and lifting assistance with certain heavy materials. The company also had plaintiff run a lighter machine. Plaintiff continued to receive favorable job performance evaluations and pay raises even after the work restrictions were put into place.

On July 12, 2010, plaintiff had an incident with a fellow employee. Plaintiff was terminated as a result of this matter. At the time of his termination, plaintiff was classified as a production machinist. His specific job duty was that of a "bar feed" operator. In this position, plaintiff would run the bar feed by feeding steel bars into a machine, operate the CNC program, drill parts, read blue prints and make edits to the CNC program. He would handle raw material that ranged in weight from 15 pounds to 70 pounds. Plaintiff's lead was Richard Mobley. His supervisor was Troy Jacobson. He had worked under Mobley for 17 years, and Jacobson for 14 years, prior to his termination. Jim Jones was the Human Resources Manager. He had worked at Great Plains since 1987.

Plaintiff was one of four machinists working in his area. The others were Bill Voll, Randall Elliott and Ken Edwards. Mobley

4

would assist plaintiff with carrying heavy raw material. Mobley also assisted other employees in the bar feed area with lifting. Voll and Elliott would also provide lifting assistance to plaintiff from time to time.

During their employment, plaintiff and Edwards would occasionally make good-natured hand gestures, facial expressions and comments back and forth at each other. On July 12, plaintiff and Edwards engaged in some words and hand gestures. The exact nature of the words and hand gestures is in dispute. Each did give the other "the finger." Eventually, they met at plaintiff's work station, which was about ten feet from Edwards' work station. At some point, plaintiff shoved Edwards. Edwards then returned to his work station. Edwards reported the incident.

After the incident, plaintiff volunteered to Voll that he thought he was "in big trouble." When Voll looked at plaintiff to see what he meant by that, plaintiff stated that he had put his hands on Edwards and pushed him.

HR Manager Jones first heard about the incident when Jacobson called him and said there was an issue. Jones told Jacobson to bring plaintiff to him so an investigation could be started. Jones and Jacobson interviewed plaintiff, Edwards, Elliott and Voll. Jones prepared a written summary of the interviews. Jones concluded after the investigation that the common thread running through each version of what occurred was that plaintiff placed his

hands on and forcefully shoved Edwards.

Edwards was given a written warning for personal conduct. Jacobson prepared the written warning. Jones agreed with the decision to give Edwards a written warning because Edwards had participated in the "sign language" and the back-and-forth bantering.

Jones, Jacobson and plant manager, Dale Wooten, participated in the decision to discipline plaintiff, and their decision was unanimous. Jones, however, had the final say on what would happen with plaintiff's employment. The decision was to terminate plaintiff. The stated reason for the termination was because plaintiff had violated Great Plains' zero tolerance policy against workplace violence. Jones understood the zero tolerance policy to mean "[i]f you put your hand on somebody, you're gone." He noted that there were no exceptions or other reasons why this rule may not be applied. There is no evidence that Jones was aware of any of plaintiff's medical issues, except that he generally knew that plaintiff had issues with his back. He was not aware that plaintiff had work restrictions. No weight was given to the fact that plaintiff had worked for Great Plains for twenty years.

Great Plains' zero tolerance policy against workplace violence provides as follow:

> Workplace Violence - Great Plains is committed to providing a safe environment for working and conducting business. The company has adopted a policy of zero tolerance of violence in the workplace. Great Plains

6

> will not tolerate threats, intimidation, or acts of violence committed by or against employees, or members of the public, while on Company property or while performing Company business at other locations. Any violent actions or threat of violent action committed by employees or members of the public while on Company property, or while using Company facilities, will be considered a flagrant violation of company policy and will be subject to disciplinary action up to and including termination.

The evidence before the court shows that this policy has been consistently applied over the years without exception. In the last five years, since adopting the zero tolerance policy, Great Plains has terminated four other employees for violating the policy against workplace violence. These employees and their circumstances were as follows: (1) Jim Lauer, who had worked at Great Plains for approximately ten years, was terminated in September 2005 for pushing a co-worker from behind into a box; (2) Bob Smith, who was hired in November 2005 and terminated in August 2006, for poking another employee in the face; (3) Bryce Fox, who was hired in January 2007 and terminated in March 2008, after punching a co-worker in the chest; and (4) Eric Timmons, who was hired in April 2008 and terminated four days later after he hit a co-worker on the head with a clamp.

Plaintiff was aware that Great Plains had a zero tolerance policy against workplace violence. He had received a copy of the employee handbook and supervisors and co-workers had talked to him about the policy. He had attended a company training session on the policy in 2005. He knew other employees at Great Plains had

been terminated for violating the policy.

Plaintiff believes he was terminated and discriminated against because of his need for accommodations in the workplace due to his disability, spondylolisthesis. As support for this contention, he has provided evidence and testified that, after he began using a stool due to his work restrictions, several people were upset about his use of the stool and would indicate that he was "sitting on [his] butt, not doing anything." Plaintiff has stated that Edwards and Elliott were the ones who gave him a hard time for sitting down on the stool. He was unable to quantify how often they made such statements. Plaintiff understood Great Plains' complaint resolution policy on how employees should make complaints if they had a problem. The policy provided that the initial complaint should be made to the employee's immediate supervisor and, if the complaint was not addressed to the employee's satisfaction, the employee should go to the shop manager. If the shop manager did not address the problem, the employee should go to the plant manager. Plaintiff has testified that he talked with Mobley on one occasion about the comments made by others. Plaintiff has indicated that Mobley responded to his complaint by stating: "Well, you're sitting on you butt all day, don't worry about it." Mobley has denied that he ever made comments about plaintiff's need for accommodation. Plaintiff did not raise the issue with anyone else. Jacobson never received any complaints from plaintiff

regarding the alleged discrimination by co-workers or supervisors.

IV.

The ADA prohibits covered employers from discriminating against their employees on the basis of disability. 42 U.S.C. § 12112(a). The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A).

The court applies the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), to ADA discrimination claims. <u>EEOC v. C.R. England</u>, 644 F.3d 1028, 1038 (10th Cir. 2011). Under this framework, plaintiff bears the initial burden of establishing a prima facie case of discrimination. <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802. If he is able to make such a showing, the burden would shift to the defendant "to articulate some legitimate, nondiscriminatory reason" for its actions. <u>See</u> <u>id</u>. Plaintiff would then bear the ultimate burden of showing that the defendant's proffered reason is in fact a pretext designed to mask discrimination. <u>See</u> <u>id</u>. at 804.

A.

The court begins by determining whether plaintiff has produced enough evidence to allow a reasonable jury to conclude that he has established a prima facie case of discrimination. This burden is "not onerous." <u>Plotke v. White</u>, 405 F.3d 1092, 1099 (10th Cir. 2005). To make out a prima facie case of disability discrimination

9

under the ADA relating to his termination, plaintiff must show that, at the time his employment was terminated, (1) he was a disabled person as defined by the ADA; (2) he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) he was fired because of his disability. Zwygart v. Bd. of Cnty. Comm'rs, 483 F.3d 1086, 1090 (10th Cir. 2007).

The defendant initially argues that plaintiff has not demonstrated that he was a disabled person as defined by the ADA. The defendant argues that a 25 to 30-pound lifting restriction coupled with the need to alternate sitting and standing does not substantially limit a major life activity. The defendant suggests that proof of a lifting restriction alone is insufficient to show substantial limitation. Plaintiff asserts that he is a disabled person under the ADA because he is substantially limited with regard to lifting and standing. He also notes that the recent amendments to the ADA support his contentions.

The ADA Amendments Act of 2008 (ADAAA), which applies here because the termination occurred on January 1, 2009, lessened the requirements of the disability inquiry. In Gibbs v. ADS Alliance Data Systems, Inc., 2011 WL 3205779 at * 3 (D.Kan. July 28, 2011), Judge Lungstrum explained the application of the ADAAA as follows:

> [T]he ADAAA was passed in response to decisions by the United States Supreme Court that, according to Congress, had "created an inappropriately high level of limitation necessary to obtain coverage under the ADA,"

10

and was intended to reinstate "a broad scope of protection ... available under the ADA." See Norton v. Assisted Living Concepts, Inc., [786] F.Supp.2d [1173], 2011 WL 1832952, at *7 (E.D.Tex. May 13, 2011) (citations omitted). While an ADA plaintiff must still show that he or she has a physical or mental impairment that substantially limits a major life activity, 42 U.S.C. § 12102(1)(A), the ADAAA has "significantly expanded" the terms within that definition in favor of broad coverage. See Norton, [786] F.Supp.2d at [1184], 2011 WL 1832952, at *7. In expanding the definition of disability, Congress intended to convey "that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis" and that the "primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations." See id. (citations omitted). Consistent with this purpose, the implementing regulations state that the terms "substantially limiting" and "major" are not intended to be "demanding" standards. 29 C.F.R. § 1630.2(i)(2) & (j)(1)(i) (2011).

Under the ADA prior to the adoption of the ADAAA, plaintiff's lifting restrictions may not have sufficed to establish him as disabled. See, e.g., Nowlin v. Kmart Corp., 50 F.Supp.2d 1064, 1070 (D.Kan. 1999), aff'd on other grounds, 232 F.3d 902 (10th Cir. 2000). However, under the ADAAA, the definition of disabled has been expanded. This has led several courts to conclude that lifting restrictions similar to those imposed on the plaintiff here are now adequate to constitute a disability under the ADA or sufficient to avoid summary judgment on the issue. See Mills v. Temple Univ., 2012 WL 1122888 at ** 8-9 (E.D.Pa. Apr. 3, 2012) (summary judgment denied to defendant on issue of whether plaintiff was disabled under the ADA because she had a lifting restriction of more than three pounds); Williams v. UPS, 2012 WL 601867 at * 3

(D.S.C. Feb. 23, 2012)(adopting and approving magistrate's ruling that summary judgment should be denied to defendant on issue of whether plaintiff was disabled under the ADA because he had a twenty-pound lifting restriction).

Although this is a close question, the court is persuaded under the less restrictive standard of the ADAAA that plaintiff has offered sufficient evidence to raise a genuine issue of fact as to whether he was disabled at the time he was terminated from employment. The court is mindful that under the ADAAA the inquiry into whether or not the limitation is substantial is not meant to be "extensive" or demanding. A reasonable factfinder could find that plaintiff is substantially limited in his ability to lift.

The defendant has also contended, albeit vaguely, that plaintiff cannot establish the third element of his prima facie case. The defendant contends that plaintiff's termination was unrelated to his back condition. Rather, the defendant points out that plaintiff was terminated for violating the company's zero tolerance on violence policy. The court, however, cannot consider this evidence at the prima facie stage. See, e.g., EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1192-94 (10th Cir. 2000)(requiring plaintiff to disprove defendant's proffered reason for employment decision to establish prima facie case would inappropriately short circuit McDonnell Douglas analysis and frustrate plaintiff's ability to establish pretext).

To survive summary judgment, plaintiff must produce enough evidence for a reasonable jury to conclude that he was fired because of his disability. Carter v. Pathfinder Energy Services, Inc., 662 F.3d 1134, 1147 (10th Cir. 2011). Again, this is a close question, but the court finds that there is enough evidence to get past this aspect of the McDonnell Douglas analysis.

B.

The court shall next turn to the remaining aspects of the McDonnell Douglas analysis. The defendant contends that it has offered a nondiscriminatory reason for terminating plaintiff and plaintiff has failed to offer any evidence of pretext.

The burden of articulating a legitimate, nondiscriminatory reason for terminating plaintiff is "one of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (internal quotation marks omitted). The burden has previously been characterized by the Tenth Circuit as "exceedingly light." See C.R. England, 644 F.3d 1028 at 1043.

The court agrees that defendant has shown a nondiscriminatory reason for terminating plaintiff--the violation of the zero tolerance for violence in the workplace policy. "It is beyond question that an employee's striking of a fellow employee is a legitimate, nondiscriminatory reason for dismissal." Ward v. Proctor & Gamble Paper Prods. Co., 111 F.3d 558, 560 (8th Cir.

1997). With that decision, the court must consider pretext.

### C.

At the final stage of the McDonnell Douglas burden-shifting framework, plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." See Reeves, 530 U.S. at 143 (internal quotation marks omitted). Plaintiff may establish pretext by "introducing affirmative evidence of a discriminatory motive," see Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1146 (10th Cir. 2008), or by showing that defendant's "proffered explanation is unworthy of credence," see Reeves, 530 U.S. at 143 (internal quotation marks omitted). He need not, however, prove that the discriminatory motive was the sole reason for his firing; rather, he must show only that it was a "determining factor." See Adamson, 514 F.3d at 1146 (internal quotation marks omitted).

Consistent with the McDonnell Douglas analysis, defendant contends that plaintiff cannot establish its proffered reason for terminating his employment was pretextual. Plaintiff has suggested that evidence of pretext exists in the record in the following ways: (1) comments made by co-workers about his disability and the failure of the defendant to act upon his complaint about them; (2) a comment made by a supervisor about his disability; (3) the differences in the application of the zero tolerance policy against

workplace violence in prior cases and this case; (4) the investigation of the incident that led to his termination was "slanted;" and (5) the differences in the application of the zero tolerance policy against workplace violence between the two individuals involved in the incident that led to plaintiff's termination. He suggests that these matters show a discriminatory intent by the defendant and that its proffered reason for termination is unworthy of credence.

The court initially turns to the alleged comments that were made concerning the plaintiff. Plaintiff has suggested that these comments show evidence of discriminatory intent. The question of these comments were directed at plaintiff's disability is not clear. In considering a motion for summary judgment, the court must construe the evidence and draw all *reasonable* inferences in favor of the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587. The inference raised by the phrase "all you do is sit on your butt"--namely, that it suggests that the defendant wanted plaintiff fired because of his physical disabilities--appears somewhat unreasonable to the court. Even if the phrase did suggest some discriminatory intent, the court must consider who said it. The comments were made by co-workers. There is also one suggestion that a supervisor made a similar comment. This might have some force if it had been made by anyone involved in the decision to terminate plaintiff. There is no evidence, however, that any of

15

individuals involved in the investigation and termination of plaintiff ever made any such comments or any other comments directed at plaintiff's disability. See Martinez v. State of Connecticut, 817 F.Supp.2d 28, 55 (D.Conn. 2011). Plaintiff's reliance on a supervisor's discriminatory comment to demonstrate pretext is unpersuasive when the defendant has offered evidence showing that the supervisor was neither involved in the investigation nor the decision to terminate. Id. The only evidence in the record shows that the ultimate decisionmaker in this case, HR Manager Jones, had no knowledge of any work restrictions imposed on plaintiff. Under these circumstances, the court is confident that plaintiff has failed to demonstrate any pretext based upon the comments that were made.

When this evidence is coupled with the evidence in the record that plaintiff worked for about twenty years with some work restrictions and for four years with more extensive work restrictions, there is an insufficient evidence of discriminatory intent. During this period, plaintiff readily admits that the defendant accommodated all of his work restrictions. He was promoted and given pay raises during this period. Other than the isolated remarks of co-workers and the one remark by a supervisor (of which there is doubt about whether they were comments that were directed at his disability), there is no evidence that the defendant ever took any adverse action against plaintiff until the

incident of June 12, 2010.

Plaintiff has also contended that the investigation of the incident of July 12 was slanted or biased. There is no evidence in the record to support this conclusory contention. Jones talked to all of the individuals who were involved or in the area of the incident. He summarized the various accounts and concluded that the consistent underlying factor was that plaintiff shoved Edwards and then Edwards left the area.

Plaintiff has offered inconsistent arguments about why the investigation was biased. On the one hand, he argues that Jones ignored his physical limitations in conducting the investigation. On the other hand, he contends that his disability was the "factor that made the difference" in the investigation. The court finds nothing in the record to support the plaintiff's conclusory allegations that the investigation was mishandled or biased. The record fails to show that the investigation leading to plaintiff's termination was inadequate or a departure from the defendant's policies.

The court next turns to plaintiff's contentions that he was treated differently than other employees. A plaintiff may show pretext "by providing evidence that he was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness." Kendrick v. Penske Transp. Services, Inc., 220 F.3d 1220, 1232 (10th Cir. 2000). Trivial

17

differences in treatment are insufficient to show pretext. See id. In addition, a plaintiff's mere speculation of differential treatment is also insufficient; rather a plaintiff must produce "specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988) (holding mere conjecture insufficient to support an allegation of pretext); see also Doan v. Seagate Tech., Inc., 82 F.3d 974, 977 (10th Cir. 1996) (holding plaintiff's "[s]peculation ... will not suffice for evidence"). Plaintiff bears the burden of showing that he and other employees were similarly situated. Kelley v. Goodyear Tire & Rubber Co., 220 F.3d 1174, 1178 (10th Cir. 2000).

The court is unable to find any support for the plaintiff's contention that there were differences in the application of the zero tolerance policy against workplace violence in prior cases. The past cases show that individuals were discharged for violating the zero tolerance policy. There has been no showing by plaintiff of any individual who engaged in the conduct that plaintiff has admitted who was not terminated. In each prior instance where the policy was applied, the particular employee was discharged after making physical contact with a co-worker. Plaintiff seeks to draw a distinction here because he was a longtime employee of the defendant. He points out that no other employee with an employment

record as long as his has ever been fired for violating the policy. He is correct. He cannot show, however, that the defendant ever overlooked the policy in the case of longtime employees. The court is not persuaded that plaintiff has demonstrated any pretext in the application of the policy as it has been applied in the past.

Plaintiff has also contended that the defendant applied the workplace violence policy differently in the incident that led to his termination. Plaintiff suggests that the actions of Edwards also constituted a violation of the zero tolerance policy and that the failure to terminate him demonstrates a pretext of discrimination. Again, the court is unable to find that the evidence in the record shows pretext.

Here, plaintiff cannot demonstrate that the two employees were similarly situated. The record is uncontroverted that plaintiff was the only one that used physical force during the incident. The defendant concluded that the employees had not violated work rules of comparable seriousness. The defendant did discipline Edwards, but not to the extent of plaintiff, due to plaintiff's use of violence. Under these circumstances, the court finds no evidence of pretext. Although both employees were involved in the same argument, their actions were clearly differentiated because the incident involved two separate levels of escalation. See Ward, 111 F.3d at 559-561. The defendant was not obligated to treat the actions of plaintiff and Edwards as substantially similar when they

involved objectively different conduct.

V.

In sum, the court finds insufficient evidence in the record to show that defendant's decision to terminate plaintiff was based in any part on his disability.  Rather, the undisputed evidence shows that plaintiff was fired for violating the zero tolerance policy against workplace violence.  As a result, the court must grant defendant's motion for summary judgment.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. # 27) be hereby granted.  Judgment shall be entered for defendant and against the plaintiff on his claim of discrimination based upon the Americans with Disabilities Act.

**IT IS SO ORDERED.**

Dated this 2nd day of July, 2012 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge